**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**EDWARD DONALD K.,**

**Plaintiff,** **6:19-CV-6425**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #18.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on November 1, 2014, alleging disability beginning September 30, 2010, at the age of 44, due to an inability to stand for more than 30 minutes, inability to concentrate due to head injury and medication, and inability to lift more than 5 pounds or reach without pain.. Dkt. #7, p.248.

On October 17, 2016, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Rena Serkin, at an administrative hearing

before Administrative Law Judge ("ALJ"), Roxanne Fuller. Dkt. #7, pp.56-87. Plaintiff testified that he had completed 2 years of college and was licensed as a mortgage loan officer. Dkt. #7, p.62. He had been employed by a mortgage company as a loan originator from 1995 through 2014, and worked part-time following the 2010 motor vehicle accident, but was only able to work with 3-4 clients in 2014 because of the second motor vehicle accident. Dkt. #7, pp.62-63 & 79. He has tried to continue working, but finds it difficult to sit with customers for the duration of an appointment and makes mistakes because he can't concentrate due to pain. Dkt. #7, pp.65-66 & 76. He also found it difficult to complete educational programs required to maintain his license due to memory problems. Dkt. #7, p.66. He tries to work so that he can survive, but testified that migraines prevent him from working at least 10-12 days per month. Dkt. #7, p.p.66-67.

Plaintiff testified that his back pain radiates down the left side of his leg. Dkt. #7, p.78. He also experiences sharp pains on the bottom of both feet from a lower lumbar nerve. Dkt. #7, p.78. His neck pain radiates down both arms and down his neck and spine when he attempts to wash dishes, so he uses paper plates. Dkt. #7, p.68. He eats prepared foods. Dkt. #7, p.69. Although he can occasionally vacuum, he got rid of his dog because he couldn't keep up with the pet hair. Dkt. #7, p.69. He won't drive on days when his neck is particularly stiff. Dkt. #7, p.71. He can sit and stand for 20-40 minutes at a time and walk 20-30 minutes at a time. Dkt. #7, pp.72-73. He cannot lift or carry more than 10 pounds and tries to avoid bending. Dkt. #7, pp.74-75. He moved his bedroom to the first floor of his home because he was having difficulty climbing stairs.

Dkt. #7, p.75. He has difficulty grasping, holding or typing due to arthritis and carpal tunnel issues. Dkt. #7, p.75. He is right handed. Dkt. #7, p.76. His medication makes him drowsy and lethargic. Dkt. #7, pp.81 & 83.

The VE classified plaintiff's past work as a loan originator as a skilled, sedentary position. Dkt. #7, p.85. When asked to assume an individual with plaintiff's age, education and past work experience who could work at the light level of exertion and was limited to occasional push or pull and overhead reaching with the left arm and occasional handling and fingering with the left hand; occasional balancing, stooping, crouching, kneeling, crawling and climbing of ramps and stairs; occasional exposure to moving mechanical parts and unprotected heights; occasional operation of a motor vehicle; and no climbing of ladders, ropes or scaffolds, with the capacity to perform simple, routine and repetitive tasks with only occasional interaction with the public, the VE testified that plaintiff could work as a routing clerk, marker, and mail clerk, each of which were unskilled, light exertion positions. Dkt. #7, pp.85-86. The VE testified that more than four absences per month or more than 20% off task per day would not be acceptable. Dkt. #7, p.86.

The ALJ rendered a decision that plaintiff was not disabled on May 3, 2017. Dkt. #7, pp.32-51. The Appeals Council denied review on January 8, 2018. Dkt. #7, p.10. Plaintiff commenced this action seeking review of the Commissioner's final decision on June 11, 2019. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related

activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) although plaintiff continued to work part-time until 2013, he had not engaged in substantial gainful activity since the alleged onset date of September 30, 2010; (2) plaintiff's migraines, post-concussion syndrome, carpal tunnel syndrome, degenerative disc disease, depression disorder and attention-deficit hyperactivity disorder ("ADHD"), constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work with the following limitations: occasional pushing or pulling and overhead reaching with the left arm and occasional handling and fingering with the left non-dominant hand; occasional exposure to moving mechanical parts and unprotected heights; occasional operation of a motor vehicle; and with the capacity to perform simple, routine and repetitive tasks with only occasional interaction with the public; and

(5) plaintiff was not capable of performing his past work as a loan originator, but was capable of working as a routing clerk, marker, and mail clerk, each of which were unskilled, light exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.37-51.

Plaintiff argues that the record, as a whole, does not support a determination that plaintiff was capable of sustaining activities on a regular and continuing basis. Dkt. #14-1, p.3. Plaintiff argues that the ALJ failed to properly evaluate opinion evidence and substitutedherown lay opinion for that of medical sources in determining plaintiff's RFC. Dkt. #14-1, pp.16-25. Plaintiff argues that his treating providers and the consultative examiner's opinions support more restrictive limitations for lifting, pushing, pulling, reaching, doing fine motor activities, standing, walking, bending, twisting and sitting for prolonged periods of time. Dkt. #14-1, p.18. Plaintiff argues that the ALJ failed to properly evaluate plaintiff's credibility and failed to account for non-exertional and episodic limitations that would preclude plaintiff's ability to sustain competitive employment. Dkt. #14-1, pp.23-28.

The Commissioner responds that the ALJ properly weighed multiple medical opinions and determined that certain opinions were not sufficiently supported by objective evidence within the voluminous treatment record and inconsistent with plaintiff's reported activities of daily living. Dkt. #16-1, pp.18--25. The Commissioner further responds that the ALJ properly considered plaintiff's subjective complaints and sufficiently explainedherdetermination that they were not well-supported by the

evidence of record. Dkt. #16-1, pp.25-27. Finally, the Commissioner argues that the ALJ appropriately determined that additional limitations relating to plaintiff's complaints of headaches were not warranted. Dkt. #16-1, pp.27-28.

An ALJ is required to consider and evaluate every medical opinion received, regardless of its source. 20 C.F.R. § 416.927(c). Generally speaking, the ALJ will afford more weight to the opinion of a treating physician because he or she is most able to provide a detailed, longitudinal picture of the plaintiff's medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. *Moscatello v. Saul*, 18-CV-1395, 2019 WL 4673432, at *11 (S.D.N.Y.Sept. 25, 2019), *citing* 20 C.F.R. § 416.927(c)(2). Thus, where the treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be afforded controlling weight. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019), *quoting* 20 C.F.R. § 404.1527(c)(2). The ALJ may afford less than controlling weight to a treating physician's opinion if it fails to meet this standard, but is required to provide good reasons for the weight assigned upon consideration of, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015). If the ALJ fails to provide a sufficient basis for discrediting the opinion of a treating physician, remand is required. *Id.*

The opinion of a treating physician is not entitled to controlling weight if it contains internal inconsistencies or contradicts the treating physician's treatment notes. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Moreover, the opinion of a treating physician need not be given controlling weight if it is not consistent with other substantial evidence in the record, including the opinions of other medical experts, such as a consulting physician. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004); *See Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) (ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that the first factor is replaced with consideration of whether the non-treating source examined the plaintiff. *White*, 414 F. Supp.3d at 383.

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited inherdecision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec*., 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support her conclusions. *Gecevic v. Sec. of Health &*

*Human Servs*., 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to her application for benefits. *Dioguardi v. Comm'r of Soc. Sec*., 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006).

In the instant case, the ALJ considered the opinions of plaintiff's primary care physician, Alexander Strasser, M.D. and consultative physical examiner, Harbinder Toor, M.D.. Dkt. #7, pp.48.

Treating Physician

Plaintiff's primary care physician, Alexander Strasser, M.D., completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), dated November 11, 2016. Dkt. #7, pp.1445-1450. Dr. Strasser opined that plaintiff could frequently lift and carry up to 10 pounds and occasionally lift and carry up to 20 pounds. Dkt. #7, p.1445. Dr. Strasser further opined that plaintiff could sit, stand, and walk 30 minutes per hour at one time without interruption and that he needed to change position frequently. Dkt. #7, p.1446. In support of this limitation, Dr. Strassert noted nerve conduction testing and MRI results demonstrated neuropathy from degenerative spinal conditions. Dkt. #7, p.1446. Dr. Strasser opined that plaintiff's hand and arm movements were limited due to cervical and lumbar pain from disc degeneration and spondylosis diagnosed by MRI, and that he could occasionally reach, handle, finger and push/pull bilaterally. Dkt. #7, p.1447. Dr. Strasser also opined that although chronic migraines may cause vertigo, plaintiff could occasionally climb stairs and ramps, climb

ladders and scaffolds, balance, stoop, kneel, crouch, crawl, operate a motor vehicle and be exposed to unprotected heights, moving mechanical parts, humidity, dust, odors, fumes and pulmonary irritants, extreme cold and heat and vibrations. Dkt. #7, pp.1448-1449.

Dr. Strasser also provided a letter dated November 29, 2016, addressed to whom it may concern, which states:

> [Plaintiff] came in the office today for an evaluation of his symptoms as he prepares to justify total and permanent disability.
>
> Regarding his back pain - he has symptomatic discogenic back disease effecting his left lower extremity. The pain comes on without warning and can be cyclic. It is difficult for him to perform usual work duties due to severe pain.
>
> His second problem deals with emotional and neurological issues. The migraine headache attacks without warning, sometimes several times a day. He has been prescribed the medications: Frova and Vicodin for these headaches. The patient feels he cannot function due to the headaches and associated anxiety. During the interview today he appeared agitated and could not keep still.
>
> In addition he has a problem with concentration which he takes Adderall three time a day to help with this problem. Putting the three area[s] of complaint together I believe [plaintiff] is legitimately disabled from work.

Dkt. #7, p.1452.

The ALJ afforded Dr. Strasser's opinion partial weight to the extent that his finding is consistent with the record, but determined that she could not assign controlling weight to his opinion because it was not entirely consistent with the evidence

of record, including plaintiff's statements regarding his activities of daily living. Dkt. #7, p.47. For example, the ALJ noted that plaintiff drives and does some household chores. Dkt. #7, p.47. The ALJ further determined that Dr. Strasser's opinion was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." Dkt. #7, p.47. The ALJ also noted that the ultimate determination of disability is an issue reserved for the Commissioner. Dkt. #7, p.47. Finally, the ALJ explained that the plaintiff

> asks me to accept the functional capacity assessment at face value, without regard to the six regulatory factors for weighing the opinion under the treating physician rule. This appears to be a variation on the argument that disability can be established even if not "by reason of" a medically determinable impairments. [sic] I am asked to simply presume that any and all restrictions assigned by the source are consistent with reasonable medical expectations - even if they are not reasonable or expected. But, in the absence of an explanation by the source as to what the medical findings actually signify in terms of expectations, the supplied opinion does not comport with the requirements of the Regulation, and thus its value is correspondingly diminished (20 CFR 404.1527(d)).

Dkt. #7, p.48.

Consultative Physical Examiner

Dr. Toor examined plaintiff on April 17, 2015. Dr. Toor observed that plaintiff appeared to be in moderate pain and exhibited an abnormal gait with slight limping to the left side. Dkt. #7, p.1373. Dr. Toor described plaintiff's heel-to-toe walking as difficult. Dkt. #7, p.1373. His squat was 20%. Dkt. #7, p.1373. Plaintiff had difficulty getting out of the chair, changing for the exam, and getting on and off the exam table. Dkt. #7, p.1373. Dr. Toor observed limited range of motion in the cervical and lumbar

spine and positive straight leg raise in both the sitting and supine position bilaterally at 20 degrees. Dkt. #7, p.1374. Deep tendon reflexes were equal in upper and lower extremities with no sensory deficit noted. Dkt. #7, p.1375. Strength was 5/5 in the upper and lower extremities. Dkt. #7, p.1375. However, hand and finger dexterity was not intact in the left hand and grip strength in the left hand was 2/5. Dkt. #7, p.1375. Dr. Toor opined that, *inter alia*, plaintiff has

> moderate-to-severe limitation with pushing, pulling, lifting, reaching, or doing fine motor activities with the left arm and left hand. He has moderate limitations with twisting of the cervical spine. Pain and headaches interfere with his physical routine. He has moderate-to-severe limitation with standing, walking, bending. He has moderate limitation with sitting a long time.

Dkt. #7, p.1376.

The ALJ afforded Dr. Toor's opinion partial weight to the extent that it is consistent with the medical evidence, explaining that although Dr. Toor examined the plaintiff,

> his assessment of functional limitations lacks the specificity that would otherwise make it more persuasive. Moreover, Dr. Toor's examination is based upon a one-time interaction with the [plaintiff] but [plaintiff's] own reports of functioning before and at the hearing undermines some of the limitations offered.

Dkt. #7, p.48.

<u>RFC</u>

As an initial matter, the omission of nonexertional limitations for occasional balancing, stooping, crouching, kneeling, crawling and climbing of ramps

and stairs and prohibition for climbing of ladders, ropes or scaffolds from the RFC is harmless error in as much as the VE opined that an individual with such limitations would be capable of performing work as a routing clerk, marker and mail clerk. Dkt. #7, p.85-86. The limitation to occasional frequency is supported by Dr. Strasser's medical source statement. Dkt. #7, 1448-1449.

The ALJ's failure to address Dr. Strasser's opinion that plaintiff could only sit, stand, and walk 30 minutes per hour at one time without interruption and that he would need to change position frequently is more problematic. Dr. Strasser is plaintiff's long-time primary care physician and the record indicates that he coordinated referrals to relevant specialists, received copies of diagnostic reports and prescribed pain medication throughout the relevant time period. Dr. Strasser's medical source statement indicates that his opinion regarding plaintiff's need to change position frequently is based upon a discogram, nerve conduction testing and MRI which demonstrate neuropathy and degenarative spinal conditions. Dkt. #7, p.1447. Multiple MRIs throughout the relevant time period note progression of mild to moderate degenerative changes of both the cervical and lumbar spine; a discogram reproduced plaintiff's pain at L4-5 and L5-S1; a nerve conduction study revealed electrodiagnostic evidence of mild chronic left L3-4 radiculopathy consistent with an L3-4 nerve root distribution Dkt. #7, pp. 1351, 1355, 1357, 1359, 1361, 1366 & 1212. On March 7, 2014, Dr. Capicotto notes that plaintiff had been "a very difficult diagnostic problem," explaining:

> EMG came back as positive for an L3 chronic radiculopathy. . . . He has a discogram that was positive at levels

> unexpected that is the L4-5 and L5-S1 levels. He had his EMG demonstrate an L3-4 radiculopathy. His MRI is moderately impressive for L3-4 fominal disc herniation.

Dkt. #7, p.1224.

Dr. Strasser's opinion of a specific limitation for standing, walking and sitting is further supported by Dr. Toor's more general opinion that plaintiff has moderate-to-severe limitation with standing and walking and moderate limitation with sitting a long time. Dkt. #7, p.1376. In addition, the Court notes that Dr. Acharya observed stiffness when plaintiff transferred from sitting to standing position upon examination on October 30, 2012 (Dkt. #7, p.1244); Dr. Gingras observed that plaintiff "had a lot of discomfort even trying to sit still for even a few minutes during this office visit" on November 4, 2013 (Dkt. #7, p.847); and Dr. Capicotto remarked that plaintiff had to change positions frequently while we were interviewing him on March 7, 2014. Dkt. #7, p.1224. Considering this evidence overall, the Court concludes that the ALJ's rejection of Dr. Strasser's opinion that plaintiff could sit, stand and walk no more than 30 minutes per hour at one time without interruption and would need to change position frequently, is not supported by substantial evidence. *See, e.g., Rosario v. Colvin*, 14-CV-191. 2016 WL 2342008 (W.D.N.Y. May 4, 2016).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of

> these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). More specifically, the SSA has explained that "the full range of light work require standing or walking, off and on, for a total of approximately 6 hours of an 8-hour day." Social Security Ruling 83-10, 1983 WL 31251, at *6 (1983). Moreover, Social Security Ruling 83-12 acknowledges that "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task," noting that "[u]nskilled types of jobs are particularly structured to that a person cannot ordinarily sit or stand at will." 1983 WL 31253, at *4 (S.S.A. Jan. 1, 1983). Because the Dictionary of Occupational Titles ("DOT"), "does not address the alternation between sitting and standing in it's job descriptions," *Reilly v. Comm'r of Soc. Sec'y*, 18-CV-1269, 2020 WL 6507327, at *4 (W.D.N.Y. Nov. 5, 2020), a VE should be consulted to clarify the implications for the occupational base. *Id.* Because the VE in the instant case was not presented with a hypothetical involving plaintiff's need to change positions frequently, she did not provide any indication that a significant number of the jobs identified would allow plaintiff to sit, stand and walk no more than 30 minutes per hour at one time without interruption and change position frequently. As a result, the ALJ's determination that plaintiff could work in an unskilled job at the light exertional level is not supported by substantial evidence. *See Gibbons v. Comm'r of soc. Sec'y*, 19-CV-33, 2020 WL 4432073, at *6 (W.D.N.Y. July 31, 2020); *Winters v. Comm'r of Soc. Sec'y*, 18-CV-4070, 2019 WL 4743822, at *17 (S.D.N.Y. Sept. 16, 2019) (remanding where ALJ's RFC assessment and hypothetical to VE failed to specify need to alternate sitting and standing).

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #14), is granted in so far as plaintiff seeks remand and the Commissioner's motion for judgment on the pleadings (Dkt. #16), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED: Buffalo, New York**
**March 30, 2021**

**s/ H. Kenneth Schroder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**